IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JOSEPH WILLIAM MOORE a/k/a JEREMIAH ISAIH, <br><br> Movant, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | No. 2:13-cv-02818-STA-cgc |

**ORDER DENYING MOTION UNDER 28 U.S.C. § 2255**

Before the Court is the Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence of Joseph William Moore a/k/a Jeremiah Isaih ("§ 2255 Motion"), filed April 6, 2015. (ECF No. 19). Moore, Bureau of Prisons register number 93927-071, is an inmate at the United States Penitentiary in Coleman, Florida. Moore asks the Court to vacate both his conviction and his sentence. For the reasons stated below, the Court **DENIES** Moore's § 2255 Motion.

**BACKGROUND**

On June 30, 2009, a grand jury returned an indictment charging Moore with three counts: (1) interference with commerce by threats or violence – robbery, in violation of 18 U.S.C. § 1951; (2) use of a firearm during and in relation to a robbery, in violation of 18 U.S.C. § 924(c); and (3) bank robbery, in violation of 18 U.S.C. § 2113(a). On August 6, 2009, the Court granted the Defendant's Motion for a Mental Evaluation in accordance with 18 U.S.C. § 4241 after defense counsel came to believe that Moore was suffering with mental health problems. (*United*

1

*States v. Joseph Moore*, No. 2:09-cr-20232-STA (W.D. Tenn.), ECF Nos. 22, 27). After two weeks of evaluation and observation from September 21 to November 4, 2009, a forensic psychologist opined that Mr. Moore was competent to understand the nature and consequences of the proceedings against him and was able to assist properly in his defense. The Court received the Forensic Evaluation on or about November 30, 2009. At a report-date hearing on December 22, 2009, Moore requested a change-of-plea hearing (ECF No. 28), which the Court conducted on January 12, 2010. (ECF No. 29). At the hearing, with leave of the Court, Moore entered a plea of guilty as to Counts 1, 2, and 3 of the indictment. (Order on Change of Plea, ECF No. 30). On April 27, 2010, the Court sentenced Moore to a term of 216 Months as to Counts 1 and 3, to be served concurrently, and a term of 84 months as to Count 2, to be served consecutively, for a total term of 300 months, followed by a 3-year period of supervised release. (Redacted Judgment, ECF No. 39).

Moore began submitting letters and "motions" to the Court and the Clerk on October 18, 2010. These documents were filed on Moore's criminal docket. (ECF Nos. 41–44, 46–51). Most of the documents were incomprehensible, but they arguably sought relief under 28 U.S.C. § 2255. On January 19, 2012, in response to an order of the Sixth Circuit Court of Appeals, this Court vacated a previous order which barred pro se filings and directed Moore to notify the Court as to whether his motions and letters sought relief under 28 U.S.C. § 2255. (ECF No. 59).

Moore eventually did so, and the Clerk docketed his § 2255 Motion on the Court's civil docket. Moore's official "Pro Se Complaint" was docketed on October 21, 2013 (*Moore v. United States*, No. 2:13-cv-02818-STA-cgc (W.D. Tenn.), ECF No. 1), but several of Moore's previous "motions" filed after judgment in his criminal case were also docketed in his § 2255 case. Along with these five motions and his Pro Se Complaint, Moore also filed several other

motions, letters, and "clarifications." After Moore filed a petition for writ of mandamus, the Sixth Circuit denied his petition but suggested that the district court should work expeditiously to resolve Moore's case. Upon review of the Moore's criminal and civil dockets, this Court could not determine exactly what relief Moore was requesting through his § 2255 Motion. Therefore, it denied all pending "motions" without prejudice to refile a comprehensive § 2255 Motion. (ECF No. 16). Moore responded by filing another petition for writ of mandamus, ostensibly appealing the Court's order. (*See* ECF No. 17). Moore also "responded" to this Court's order, arguing that the ruling had "set the district court in position to dismiss any § 2255 filing." (ECF No. 18). Moore then filed his Amended Motion Under 28 U.S.C. § 2255 on the official form on April 6, 2015. (ECF No. 19). Four days later, Moore filed a Supplement to his § 2255 Motion, in which he restates his positions. (ECF No. 20). Finally, Moore filed a "Motion to Amend," in which he argued that his § 2255 Motion was filed on January 24, 2011, rather than October 18, 2013, the date reflected on Moore's civil docket. (ECF No. 21).

## STANDARD OF REVIEW

Under 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.[1]

To obtain relief under § 2255, Moore must show "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so

---

[1] 28 U.S.C. § 2255(a).

fundamental as to render the entire proceeding invalid."[2] Moore claims that his plea was not given voluntarily, knowingly, and intelligently, that he was not competent to understand the proceedings against him, and that his representation was constitutionally deficient. He also claims that his sentence was "excessive." For clarity, the Court addresses these arguments in a different order than that presented by Moore.

## DISCUSSION

**I. Statute of Limitations**

Section 2255 imposes a one-year period of limitation, which runs from the latest of the following:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.[3]

Furthermore, "for purposes of collateral attack, a conviction becomes final at the conclusion of direct review."[4] Moore's conviction became final on May 5, 2010.[5] He did not appeal. Instead,

---

[2] *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003) (internal quotation marks omitted).

[3] 28 U.S.C. § 2255(f).

[4] *Johnson v. United States*, 246 F.3d 655, 657 (6th Cir. 2001).

[5] Judgment, *United States v. Joseph Moore*, No. 2:09-cr-20232-STA (W.D. Tenn. May 5, 2010).

4

as noted above, he began filing letters and motions on his criminal docket in October of 2010. After the Sixth Circuit Court of Appeals requested that this Court respond to a petition for writ of mandamus filed by Moore, this Court vacated an order striking pro se filings, denied a motion for enlargement of time to appeal, and directed Moore to notify the Court whether his motions sought relief under 28 U.S.C. § 2255.[6] Moore notified the Court that all of the filings in his criminal case were "§ 2255 as far as possible."[7] Thus, for the purposes of ruling on this Motion, the Court assumes that Moore has timely filed his § 2255 Motion and analyzes the merits of his claims.

## II. Grounds for Relief

### A. Moore's Competency During the Proceedings

Moore's second stated ground for relief is that "the court and the people associated with this case acted prematurely in determining that defendant was competent and capable of affectively [sic] assisting in his defense."[8] Moore claims that at his change-of-plea hearing, "evidence showed that [he] was suffering and that these unrevealed diagnoses had direct bearing on his ability to perceive and act with reality."[9] Moore states that "the court should not have

---

[6] Order Directing Def. to Notify Court Whether Mots. Seek Relief Under § 2255, *United States v. Joseph Moore*, No. 2:09-cr-20232-STA (W.D. Tenn. Jan. 19, 2012).

[7] Letter of Joseph William Moore, *United States v. Joseph Moore*, No. 2:09-cr-20232-STA (W.D. Tenn. March 20, 2012).

[8] Am. § 2255 Mot. at 6–7, ECF No. 19.

[9] *Id.* Moore also claims that he was denied effective assistance of counsel because his attorney did not bring any of these facts to the Court's attention. This argument is addressed below.

accepted [his] plea while he was not taking his anti-psychotic medicine."[10] Thus, essentially, Moore is arguing that his guilty plea was not made voluntarily, knowingly, and intelligently.

First, the constitutional test for competency to enter a plea is the same as the test for standing trial.[11] The test requires that a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him."[12] The Court considers several factors in determining a defendant's competence, "including 'evidence of a defendant's irrational behavior, [the defendant's] demeanor at trial, and any prior medical opinion on competence to stand trial.'"[13] The Court's "determination of competency is a factual finding entitled to a presumption of correctness, and can only be refuted by clear and convincing evidence."[14]

Even assuming that Moore's factual statements are true, he has not shown that his alleged mental illness prevented him from having a rational as well as factual understanding of the proceedings against him. A forensic psychologist opined that Moore was competent. At his plea hearing, Moore represented multiple times that although he had not been taking a prescribed "psychotic medication," he understood the proceedings and the charges against him and wanted to move forward. He also stated that he had discussed the plea with his attorney. After the Court inquired whether Moore was taking any type of medication and Moore represented that he was,

---

[10] *Id.* at 7.

[11] *Williams v. Bordenkircher*, 696 F.2d 464, 466 (6th Cir. 1983).

[12] *Dusky v. United States*, 362 U.S. 402, 402 (1960).

[13] *United States v. Miller*, 531 F.3d 340, 348 (6th Cir. 2008) (quoting *Drope v. Missouri*, 420 U.S. 162, 172 (1975)).

[14] *Dover v. United States*, No. 08-20419, 2012 U.S. Dist. LEXIS 107618, at *9 (E.D. Mich. Aug. 1, 2012) (citing *Mackey v. Dutton*, 217 F.3d 399, 413 (6th Cir. 2000)).

the Court probed extensively. Reproduced below are several excerpts from the transcript of the plea hearing:

> MR. ALDEN:[15] And, Your Honor, just let me interject here. [Moore] was recently returned from a mental health evaluation where he was receiving medicine. Since he's been back from [the Federal Correctional Institution in] Butner for about three weeks, he hasn't been able to get his medicine. I asked him today, this morning—this afternoon before we proceeded whether it was still his intention to proceed today, and I told him that the Court would inquire regarding that, and he has indicated to me that he still would like to proceed, that he's feeling fine, that he is not having any problems, and that it is his intention to go ahead and proceed with his plea. But I did indicate to him that the Court needed to inquire regarding that to make sure that the Court was satisfied that it would be a knowing, intelligent and voluntary plea, so just so the Court . . . has that background information.
>
> THE COURT: Thank you.
> Mr. Moore, you heard what Mr. Alden just said. Is that all pretty well correct?
>
> THE DEFENDANT: I understand what's going on.
>
> THE COURT: I know that you do, but I want to also be satisfied that you are not under any pressure or that you don't feel like that you are being encouraged or compelled to enter a plea unless that's what you want to do.
>
> THE DEFENDANT: I want to.
>
> THE COURT: You sure you are ready to enter a plea of guilty to the charges contained in the indictment?
>
> THE DEFENDANT: Yeah.
>
> . . . .
>
> THE COURT: Does [not having taken the medicine for a period of time] present any problems for you? I mean sometimes when people are accustomed to having medication and then they don't have it, it causes problems or concerns. Are you having any problems as a result of not receiving the medication?

---

[15] Mr. Alden was Moore's attorney during the proceedings.

THE DEFENDANT: No, huh-uh.

THE COURT: You feel like you are ready to proceed and that there is nothing that's affecting you because you haven't received the medication; is that correct?

THE DEFENDANT: That's true. I'm ready to go.

. . . .

THE COURT: Mr. Alden said you wanted to proceed today.

THE DEFENDANT: I do.

THE COURT: Why do you want to proceed today?

THE DEFENDANT: I mean the conditions at the jail that I'm in, I really would like to go ahead and get this process over with. And I mean I had that, but really there is no way I can plead not guilty to this crime.

THE COURT: Okay. I'm not disputing that, but why would it make any difference if we did it today or waited until after you were receiving your medication, or would it make any difference as far as you are concerned?

THE DEFENDANT: Well, I mean it wouldn't make any difference.

THE COURT: You are just ready to move forward?

THE DEFENDANT: Yes sir.

. . . .

THE COURT: So you've been through the federal court system before?

THE DEFENDANT: Yes, several times.

THE COURT: And you are telling me that you are not suffering from any type of emotional or mental complications that you think are in any way interfering with your ability to make a clear conscious decision in this matter; is that correct?

> THE DEFENDANT: My thinking is clear. I understand.[16]

The Court then probed even further, asking questions about Moore's prior mental-health treatment. Finally, the Court addressed the issue for a final time:

> THE COURT: Okay. Well, Mr. Moore, my concern is just simply what Mr. Alden said. I just want to be sure that you know what you are doing and that we are not operating under any pressure or threat. And do you understand that if you indicate to me in any way that you want to think about this more or you are not ready to proceed or you think that not having your medication for a period of time is affecting your reasoning, then I'll be more than happy to delay these proceedings, and we will reschedule them and come back another day; do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: But you want to proceed; is that correct?
>
> THE DEFENDANT: Yes, I do. I want to proceed.[17]

Moore represented, time and time again, that he understood the charges and proceedings, that his lack of medication did not affect him, that he had discussed his plea with his attorney, and that he did not wish to push the proceeding to a later date. "A defendant's statements at a plea hearing should be regarded as conclusive as to truth and accuracy in the absence of a believable, valid reason justifying a departure from the apparent truth of those statements."[18] Furthermore, "[a]bsent 'extraordinary circumstances,' a convicted criminal is bound by his sworn statements at the plea hearing."[19] Moore did not behave irrationally at the proceedings, and he was clearly

---

[16] Tr. of Change of Plea 6:2–12:15, ECF No. 23.

[17] Tr. of Change of Plea 13:16–14:5.

[18] *United States v. Owens*, 215 F. App'x 498, 502 (6th Cir. 2007) (citations and internal brackets omitted).

[19] *Glenn v. United States*, No. 3:08-0494, 2008 U.S. Dist. LEXIS 53382, at *17 (M.D. Tenn. July 14, 2008) (citing *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)).

able to assist his attorney. When the Court heard the attorney's statements regarding Moore and his wishes, the Court asked Moore if he understood his attorney's statement. Moore asserted that he understood and wanted to proceed with his plea. Ultimately, Moore bears the burden of proving his incompetence at the time of his plea.[20] Moore has failed to show that he was not competent.

### B. Moore's Sanity at the Time of the Crime

Moore argues that he was "psychotic during the commission of [his] offense," that "[h]e was diagnosed psychotic just prior to and immediately after the offense."[21] He argues that a state psychiatric hospital declared him insane prior to the offense but that no one investigated the issue.[22] As discussed in detail above, however, Moore was competent at the plea hearing and pled guilty to the counts charged in the indictment. He affirmed his knowledge of his right to trial by jury, the presumption of innocence, cross-examination, the right to testify, and his waiver of right to jury trial upon the Court's acceptance of his plea.[23] He consulted with his attorney and understood the proceedings. After this interchange, Moore affirmed that he wished to enter a plea of guilty. The prosecutor then laid out, in detail, the evidence that the government would have offered against him:

> . . . The government would have shown that on May 30th, 2009, the defendant did enter a Rite Aid which was located at 1780 North Germantown Parkway, which is in Cordova, Tennessee. He approached the clerk and pointed a handgun at her and demanded

---

[20] *Brakefield v. United States*, No. 90-5656, 1991 U.S. App. LEXIS 7001, at *6 (6th Cir. Apr. 1, 1991) (citing *Conner v. Wingo*, 429 F.2d 630, 639 (6th Cir. 1970)).

[21] Am. § 2255 Mot. at 9, ECF No. 19.

[22] *Id.*

[23] Tr. of Change of Plea 14:6–15:14.

> money from the register. The clerk was unable to open the register, at which point the defendant turned and ran out of the Rite Aid grabbing a bottle of cough syrup on his way out. Subsequent to that, on June 2nd of 2009, the defendant entered a Regions Bank also on Germantown Parkway in Cordova, Tennessee. He approached the teller, handed the teller a not [sic] indicating he had a handgun. The note demanded money in hundreds, fifties and twenties. The teller gave the defendant $1,500 in case. He ran out of the bank, left the business, got on a bicycle and fled the scene. A few minutes later the defendant was located hiding in a tree a short distance from the bank. He was brought back to the bank where he was positively identified by the two tellers.
> All the victims in this case, including the clerk at Rite Aid and the tellers at the bank described the defendant as having particular tattoos on his forearm and neck. The defendant did in fact have the tattoos that matched the description of victims. A photo spread was prepared and shown to the clerk at the Rite Aid store. He was positively identified in that photo spread.[24]

When the Court asked if the statements made by the government were substantially true and correct regarding his involvement, Moore replied, "Yes, sir, everything she said is s [sic] true."[25]

Throughout the proceeding, Moore was given ample opportunity to object, continue the proceeding, or inquire of his attorney. He constantly stated, under oath, that he wanted to proceed and that he understood the proceedings against him. He then heard the charges against him and the facts to be used against him, admitting all as true. He made his plea knowingly, willfully and intelligently. He may not now withdraw the plea by claiming that he did not possess the requisite mental state to commit the crimes.

### C. Ineffective Assistance of Counsel

Moore's first stated ground for relief is ineffective assistance of counsel. Moore claims that his "counsel did not introduce any of the psychiatric records from institutions, and counsel

---

[24] Tr. of Change of Plea 17:10–18:11.

[25] Tr. of Change of Plea 18:19–20.

11

ignored other evidence of defendants [sic] condition and psychotic condition at the time he committed [the] offence."[26] Furthermore, Moore claims that "the court[-]appointed competency evaluation did not thouroughly [sic] investigate this, only making reference in the report that those records existed."[27] Moore argues that he could not possess the mental state required to commit the crime and that he could not understand the proceedings against him, yet his attorney made no attempt to raise these issues.

The Supreme Court established a two-part test for determining whether an ineffective assistance of counsel claim is valid. First, Moore must show that his attorney's representation was deficient.[28] In other words, he must show that representation fell below an objective standard of reasonableness, and therefore his attorney was not acting as "counsel" to satisfy the Sixth Amendment.[29] Second, Moore must show that the deficient performance prejudiced his case—that the error had an effect on the judgment.[30] Moore must show that but for the errors of his attorney, the result of the proceedings would have been different.[31] Finally, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[32]

---

[26] Am. § 2255 Mot. at 4.

[27] *Id.*

[28] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[29] *See id.* at 688.

[30] *Id.* at 691–92.

[31] *Id.* at 695.

[32] *Id.* at 689.

12

Moore's counsel requested a determination of competency before his change-of-plea hearing and sentencing. The Court granted that competency evaluation. Moore then testified at his change-of-plea hearing that he had an opportunity to discuss his case fully with his attorney, that his attorney had explained the facts, law, and options to Moore's satisfaction, and that he was satisfied with his attorney's representation.[33] Furthermore, as described above, Moore testified consistently that despite his lack of medication and previous mental issues, he understood the proceedings and wanted to enter a plea of guilty. In light of these facts, Moore's attorney stated on the record that he had asked Moore "whether it was still his intention to proceed" with a guilty plea and that Moore indicated that he was "feeling fine, that he [was] not having any problems, and that it [was] his intention to go ahead and proceed with his plea."[34] When the Court asked Moore if this was true, Moore responded, "I understand what's going on."[35] Moore then pled guilty. Therefore, Moore has not provided any facts which would rebut the strong *Strickland* presumption that his counsel rendered adequate assistance.

As to Moore's claim that his attorney failed to raise his alleged inability to possess the requisite mental state at the time of the crime, Moore's claim also fails. First, if Moore was competent to enter a plea, then he was certainly competent at the time of the plea to bring the issue of his alleged insanity to the attention of his attorney. Nowhere in Moore's Amended § 2255 Motion does he claim that he instructed his attorney to pursue an insanity defense. Instead, he states that "the Court and the people associated with this case had every reason to look

---

[33] Tr. of Change of Plea 5:5–15.

[34] Tr. of Change of Plea 6:2–17.

[35] Tr. of Change of Plea 6:21.

13

closer," but the Court "acted prematurely and prejudiced the Defendant."[36] But his attorney did not ignore Moore's alleged mental-health issues: he sought and received an order from the Court for a mental evaluation. Throughout a lengthy plea colloquy in which the Court directed questions to Moore, he never raised the issue and proceeded confidently with his guilty plea. When asked if he had anything to say at sentencing, Moore never raised the issue. Therefore, Moore has not provided any facts showing that his counsel rendered ineffective assistance on this basis.

The same is true for his sentencing. Moore claims that his counsel was ineffective in failing to set forth his mental-health issues for "mitigation at penalty phase."[37] But Moore's attorney did raise the issue, pointing out that "getting on a bicycle and riding away and hiding in a tree, there is [sic] some interesting inferences that you can make from some of the conduct actually in the case."[38] His attorney mentions "therapy," "mental health problems," and Moore's "problems and his issues."[39] The Court then gave Moore the opportunity to speak. He spoke of how he was a danger to society because he was "created by [the Court's] systems." Nevertheless, the Court did take into consideration the very mental-health issues that Moore claims his attorney failed to raise:

> [H]owever, as far as his mental and emotional health and well being, the [presentence] report indicates that Mr. Moore has been diagnosed and treated for a variety of mental health issues, some related to drug use and some strictly related to depression and to suicidal ideations and other emotional and mental health issues.

---

[36] Am. § 2255 Mot. at 6.

[37] *Id.* at 5.

[38] Tr. of Sentencing 15:7–11, ECF No. 23-1.

[39] Tr. of Sentencing 16:6–11, 17:6–7.

> There has been a variety of treatments, however, as has been pointed out, the report is pretty consistent in concluding that Mr. Moore either cannot or refuses to do what he can to try to help himself. . . . Mr. Moore does have at least some mental health issues that have been severely complicated by the use of drugs.[40]

Thus, even assuming that his counsel did not raise mental-health issues at sentencing—he did—Moore has not proven that he was prejudiced by such an omission. Moore's claim for ineffective assistance fails.

### D. "Excessive Punishment"

Moore's final ground for relief is that the "penalty phase in [his] case [was] too excessive" and violated the constitution. Moore argues that the Court should have considered his mental-health issues at the time of the crime to mitigate his sentence. As described above, the Court did consider these factors. Moore does not allege that the Court's sentence was outside the guideline range or that the sentence was unconstitutional on its face. Instead, he argues that "the facts [in] this case warrants [sic] mercy" because there are "too many mitigating factors." This does not state an "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid."[41] The claims fails.

## III. Appeal Issues

The district court must evaluate the appealability of its decision denying a § 2255 motion and issue a certificate of appealability "only if the applicant has made a substantial showing of

---

[40] Tr. of Sentencing 21:15–23, 22:10–12.

[41] *See Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003) (internal quotation marks omitted).

15

the denial of a constitutional right."[42] No § 2255 movant may appeal without this certificate, which must indicate the specific issue(s) that satisfy the required showing.[43] A movant makes a "substantial showing" when he demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."[44] A certificate of appealability does not require a showing that the appeal will succeed,[45] but courts should not issue a certificate as a matter of course.[46]

Moore has not shown that he was unable to understand the nature of the proceedings against him. He was competent at his change-of-plea hearing, where he pled guilty to the counts charged in the indictment. Furthermore, his counsel was not defective in either failing to raise the issue of incompetency or the issue of insanity at the time of the offense. Finally, his sentence was not imposed outside the statutory limits or in violation of the constitution. Therefore, the Court DENIES a certificate of appealability.

The Prison Litigation Reform Act of 1994 does not apply to appeals of orders denying § 2255 motions.[47] Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper

---

[42] 28 U.S.C. § 2253(a), (c)(2); *see also* Fed. R. App. P. 22(b).

[43] 28 U.S.C. § 2253(c)(2)–(3).

[44] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks and citation omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same).

[45] *Miller-El*, 537 U.S. at 337.

[46] *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005).

[47] *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997).

status in accordance with Federal Rule of Appellate Procedure 24(a).[48] Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.[49] But Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.[50]

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, in accordance with Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is DENIED.[51]

## CONCLUSION

For the reasons stated above, Moore has not shown a constitutional error, a sentence imposed above the statutory limit, or an error so egregious as to render the entirety of Moore's proceeding invalid. Thus, Moore's Motion Under 28 U.S.C. § 2255 is **DENIED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
HON. S. THOMAS ANDERSON
UNITED STATES DISTRICT COURT

Date: May 26, 2015.

---

[48] *Id.* at 952.

[49] Fed. R. App. P. 24(a)(1).

[50] *See* Fed. R. App. P. 24(a)(4)–(5).

[51] If the Movant files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days.